**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ROBERT K. WILSON** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 1:16-CV-214-MTP**

**CAROLYN W. COLVIN** **DEFENDANT**

**OPINION AND ORDER**

Plaintiff Robert Keith Wilson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying Wilson's claim for disability insurance benefits and supplemental security income. The matter is now before the Court on the Plaintiff's Motion for Summary Judgment [20]. Having considered the pleadings, the record, and the applicable law, the Court finds that the Plaintiff's Motion for Summary Judgment [20] should be DENIED, the Commissioner's final decision should be AFFIRMED, and this action should be DISMISSED.

**PROCEDURAL HISTORY**

On December 20, 2012, Plaintiff applied for disability insurance benefits and supplemental security income payments under the Social Security Act, alleging disability as of April 15, 2012, due to "numbness from nose to toes, neuropathy, depression, headache," dizzy spells, memory loss, and acid reflux. *See* [15] at 57. Plaintiff's claim was denied initially on May 16, 2013, and upon reconsideration on August 9, 2013. *Id*. at 103. Thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 8. On September 23, 2014, a hearing was convened before ALJ Laurie H. Porciello. *Id*. at 29. The ALJ heard testimony from Plaintiff and Ray Burger, a vocational expert. *Id*. at 30. On February 19, 2015, the ALJ issued a decision

finding that Plaintiff was not disabled. *Id*. at 13. Plaintiff appealed the ALJ's decision, and on April 15, 2016, the Appeals Council denied review, rendering the ALJ's decision the final Agency decision. *Id*. at 5.

Plaintiff filed the complaint appealing that decision in this Court on August 17, 2016. *See* [1]. The Commissioner answered the complaint, denying that Plaintiff is entitled to any relief. *See* [14]. Plaintiff has now moved for Summary Judgment [20]. The parties briefed the issues in this matter pursuant to the Court's Order [18], and the matter is now ripe for decision.

## FACTUAL AND MEDICAL HISTORY

Plaintiff was 41 years old at his alleged disability onset date. *See* [15] at 37. He completed two and a half years of college and previously worked as a table game dealer in a casino. *Id*. According to Plaintiff, he has a history of back pain and spasms, leg pain, and pain and numbness in his hands and feet related to polyneuropathy,[1] cervicalgia,[2] cervical radiculopathy,[3] lumbago,[4]

---

[1] Polyneuropathy is neuropathy of several peripheral nerves simultaneously. Dorland's Illustrated Medical Dictionary 1432 (29th ed. 2000). Neuropathy is a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflamatory lesions as opposed to those of neuritis; the etiology may be known or unknown. *Id*. at 1212.

[2] Cervicalgia is neck pain that occurs toward the rear or the side of the cervical vertebrae. *See* Cervicalgia Symptoms and Treatment, Southeastern Spine Institute, http://www.southeasternspine.com/spinal-proceduresteatments/spinal-anatomy-and-conditions/cervicalgia/ (Last Visited June 29, 2017).

[3] Cervical radiculopathy is a pinched nerve in the back. *See* A Patient's Guide to Cervical Radiculopathy, University of Maryland Medical Center, http://www.umm.edu/programs/spine/health/guides/cervical-radiculopathy (Last Visited June 29, 2017).

[4] Lumbago is pain in the lumbar region. Dorland's Illustrated Medical Dictionary 1029 (29th ed. 2000).

lumbar radiculopathy,[5] and bulging discs in the lumbar spine with nerve root compression at L3. *Id*. at 326-337. Additionally, he claims to have neuralgia,[6] restless leg syndrome, hypertension, headaches, depression, and insomnia. *Id*.

Between November and December 2010, Plaintiff sought treatment from Timothy J. Murphy, D.C., a chiropractor, for lower back pain, left side sciatica, and possible discopathy. *Id*. at 240-44. In December 2010, Plaintiff spoke to Dr. Joseph D. Hull at Primary Care Medical Center PLLC and complained of sciatica and pain radiating down his hip to his thigh and knee. *Id*. at 245-53. Between January and April 2012, Plaintiff sought treatment from Dr. Edward Aldridge at Oncall Medical Clinic for back, foot, and neck pain and bilateral arm numbness radiating down to the fingers. *Id*. Dr. Aldridge diagnosed Plaintiff with back pain and depression. *Id*.

In January and April 2012, Dr. Hull assessed idiopathic peripheral neuropathy and recommended that Plaintiff see a neurologist. *Id*. at 286. In February 2013, Plaintiff complained of ongoing numbness in his extremities and short term memory issues, and Dr. Hull assessed hypertension, polyneuropathy, and organic periodic limb movement sleep disorder. *Id*. at 281. Dr. Hull referred Plaintiff to neurologist Dr. Diane Ross. *Id*.

---

[5] Radiculopathy is disease of the nerve roots. Dorland's Illustrated Medical Dictionary 1511 (29th ed. 2000). Lumbar radiculopathy is disease of the nerve roots in the lumbar region. Lumbar radiculopathy is also known as sciatica. *See* Radiculopathy, Johns Hopkins Medicine, http://www.hopkinsmedicine.org/healthlibrary/conditions/nervous_system_disorders/acute_radiculopathies_134,11/ (Last Visited June 29, 2017).

[6] Neuralgia is pain extending along the course of one or more nerves. Dorland's Illustrated Medical Dictionary 1206 (29th ed. 2000).

On June 3, 2013, Plaintiff saw Dr. Ross with complaints of numbness and tingling. *Id*. at 22, 328. He described the numbness and tingling as a severe dull aching. *Id*. He stated the pain was a sharp, stabbing, piercing, shooting, and burning sensation. *Id*. Dr. Ross found that Plaintiff had decreased perception to light touch and observed his gait to be "reeling," slow, and unsteady. *Id*. She diagnosed him with progressive idiopathic neuropathy due to alcohol use and a displacement of a lumbar disc without myelopathy. *Id*.

On July 24, 2013, Dr. Ross completed a residual functional capacity form and stated that Plaintiff had progressive idiopathic neuropathy, persistent insomnia, polyneuropathy, lumbago, B complex deficiency, alcoholic polyneuropathy, and lumbar disc displacement. *Id*. at 23; 342. Dr. Ross noted the Plaintiff's polyneuropathy, back pain, and leg weakness prevented him from standing for six to eight hours and recommended minimal standing time. *Id*. at 23; 343-44. Dr. Ross reported that he could rarely reach above his shoulders, reach down to waist level, reach down towards the floor, or carefully handle objects. *Id*. at 23; 344. She opined that Plaintiff could not bend, squat, or kneel and could only turn parts of his body with difficulty. *Id*. at 23; 345. She stated that Plaintiff could not drive because he could not feel the pedals and could not sit for long periods of time. *Id*. Dr. Ross also opined that Plaintiff's pain was daily, severe, and unlikely to change. *Id*. at 23; 345-46.

X-Rays of Plaintiff's lumbar spine showed mild degenerative changes, but the disc spaces were adequate and there were no acute abnormalities. *Id*. at 23; 319. A magnetic resonance imaging scan ("MRI") of his lumbar spine showed L3-4 left lateral disc protrusion, compressing the existing L3 nerve root; L5-S1 subligamentous disc protrusion, without focal neural compression; and bilateral L4-5 annulus tears. *Id*. at 23; 338.

On April 24, 2013, Dr. Harold Todd Coulter examined Plaintiff on a consultative basis. *Id*. at 23; 321. Plaintiff stated that he was not able to sit or stand for 15 minutes at a time. *Id*. Dr. Coulter noted that Plaintiff walked into the examination room without assistance, sat comfortably across from the examiner, and was able to get on and off the examination table. *Id*. at 23; 322. Dr. Coulter observed that all range of motion measurements were found to be within normal limits. *Id*. at 23; 323. On physical examination, there was no evidence of a positive Tinel's[7] or Phalen's[8] sign or any relevant testing. *Id*. Additionally, Dr. Coulter stated that there was no evidence of any paravertebral muscle spasm, tenderness, crepitus, effusion, or deformity. *Id*. Motor strength was 5/5 in the upper extremities and his grip strength was 5/5. *Id*. No weakness or atrophy was noted by Dr. Coulter. *Id*. Dr. Coulter found Plaintiff capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently and did not find any other limitations. *Id*.

State agency consultant, Dr. Madena Gibson, reviewed Plaintiff's medications and medical records as of May 15, 2013. *Id*. at 23; 57. She found Plaintiff capable of performing medium exertional work with occasional climbing of ramps and stairs but no climbing of ladders, ropes, or scaffolds. *Id*. at 23; 64. Additionally, she found Plaintiff capable of occasional balancing, stooping, kneeling, crouching, and crawling, but she stated that Plaintiff should avoid

---

[7] Tinsel's sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." Dorland's Illustrated Medical Dictionary 1644 (29th ed. 2000).

[8] Phalen's sign is a test for carpal tunnel syndrome. *See* Phalen's or Wrist Press Test, The University of West Alabama Livingston Athletic Training and Sports Medicine Center, http://at.uwa.edu/special%20tests/specialtests/upperbody/Phalen's.htm (Last Visited June 29, 2017).

exposure to hazards such as moving machinery and unprotected heights. *Id*. Dr. Robert Culpepper, a consultative physician, affirmed Dr. Gibson's opinion on August 9, 2013. *Id*. at 23; 103.

**BURDEN OF PROOF**

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> > 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> >
> > 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
> >
> > 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> >
> > 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> >
> > 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

862 F.2d 471, 475 (5th Cir. 1988) (citations and footnotes omitted). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Id*.

## ADMINISTRATIVE LAW JUDGE'S ANALYSIS

The ALJ held a hearing in this matter and, upon applying the five-step sequential analysis described above, rendered a decision that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2012, his alleged disability onset date. *See* [15] at 18. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, lumbar disc displacement, lumbago, polyneuropathy, cervicalgia, and restless leg syndrome. *Id*. At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 20.

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can stand/walk only four hours in [an] eight-hour workday; he should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; he should avoid even moderate exposure to hazards including moving machinery and unprotected heights; and he can frequently, but not constantly, use his hands to perform fine or gross manipulations." *Id*. The ALJ went on to determine at step four that Plaintiff could not perform any past relevant work, but found at step five that jobs existed in significant numbers in the national economy that he could perform. *Id*. at 25-26.[9] Accordingly, the ALJ found that Plaintiff was not disabled. *Id*. at 26.

---

[9] These jobs included: (1) mail clerk with 89,900 such jobs in the national economy; (2) shipping/receiving clerk with 85,100 such jobs in the national economy; and (3) inspector with 145,800 such jobs in the national economy.

**STANDARD OF REVIEW**

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff raises the following issues for review:

(1) Whether the ALJ's RFC determination was supported by substantial evidence.

(2) Whether the Appeals Council erred in failing to consider new and material evidence.

***Substantial Evidence Supporting the ALJ's Assessment of Plaintiff's RFC***

Plaintiff argues that the ALJ's determination is not supported by substantial evidence and that the ALJ failed to give proper weight to the opinion evidence. *See* [21] at 11. Social Security Rule 96-8 requires an ALJ to discuss a claimant's ability to perform sustained work activity on a regular and continuing basis and to resolve any inconsistencies in the evidence. *See* SSR 96-8p. However, an ALJ is not required to discuss each piece of evidence in the medical records. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (ruling that the ALJ does not need to specifically address all of the rejected evidence). The record demonstrates that the ALJ complied with SSR 96-8 by providing a narrative discussion of the evidence supporting her determination and resolving inconsistencies in the evidence as a whole. *See* [15] at 16-27. The ALJ found that Plaintiff has the RFC to perform a reduced range of light work, and the record demonstrates that the ALJ's determination is supported by substantial evidence. *Id*. at 20.

The ALJ observed that x-rays of Plaintiff's lumbar spine showed mild degenerative changes but that the disc spaces were adequate and there were no acute abnormalities. *Id*. at 23; 319. Additionally, the ALJ discussed Plaintiff's MRI results, which indicated that his lumbar spine showed L3-4 left lateral disc protrusion, compressing the exiting L3 nerve root; L5-S1 subligamentous disc protrusion, without focal neural compression; and bilateral L4-5 annulus tears. *Id*. at 23; 338.

The ALJ also discussed Plaintiff's activities of daily living, which included daily hygiene, vacuuming, sweeping, and preparing food in a microwave. *Id*. at 19; 40. Plaintiff stated that his daily activities included watching television and taking care of a fish tank. *Id*. at 321. Plaintiff lives with a roommate and sometimes socializes with his family. *Id* at 23; 36. Plaintiff also told Dr. Coulter that he can "transfer, toilet, bathe, clothe, feed, and groom himself." *Id*. at 321. The ALJ determined that Plaintiff had only mild limitations in the areas of activities of daily living; social functioning; and concentration, persistence, or pace. *Id*. at 23.

The ALJ provided a thorough discussion of Plaintiff's medical records and resolved the inconsistencies in the evidence. *Id.* at 16-27. Nothing about the ALJ's findings or the record suggests that the ALJ failed to properly consider the evidence. *Id*. Furthermore, Plaintiff had the burden to demonstrate to the Court that no substantial evidence supports the ALJ's decision, and in the opinion of the Court, Plaintiff has not met that burden. This Court does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner. Additionally, Plaintiff has failed to show that no credible evidentiary choices or medical findings support that ALJ's decision. *Selders,* 914 F.2d at 617; *Boyd*, 239 F.3d at 704.

Plaintiff also argues that the ALJ gave too little weight to the opinions of his treating physicians and too much weight to consultative examiners. Plaintiff specifically asserts that the ALJ erred in only affording "some weight" to Dr. Ross's opinion.

A treating physician's opinions should be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with…other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)) (alteration in original).

However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id*. (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 456 (citation omitted). The ALJ stated that she considered Dr. Ross's opinion and found that Plaintiff's limitation to the degree Dr. Ross asserts would be based primarily on Plaintiff's subjective reports, which are not fully supported by the objective and clinical evidence. *See* [15] at 24; 342-347.

The ALJ's opinion demonstrates that she carefully considered the medical records from Plaintiff's treating sources alongside the consultative examiners' opinions. The ALJ noted that Plaintiff's treating medical professionals had diagnosed him with lumbar disc displacement, lumbago, and polyneuropathy. *Id*. at 23. The ALJ also noted that Plaintiff had x-rays and an MRI. *Id*. Plaintiff's x-ray showed only mild degenerative changes, that his disc spaces were adequate, and that there were no acute abnormalities. *Id*. at 23; 319. The ALJ discussed the treating physician's treatments and opinions and gave some weight to those opinions. *Id*. at 24.

Plaintiff's medical records as a whole do not contradict the ALJ's RFC assessment for a restricted range of light work. The record demonstrates that the ALJ's decision was based all of Plaintiff's medical records, including records from his treating sources. The ALJ considered Dr. Coulter's observations and Dr. Ross's opinions and found Plaintiff's "true capacities lie somewhere between these opinions." *Id*. In summary, the record demonstrates that the ALJ

properly assessed Plaintiff's RFC and substantial evidence supports the ALJ's decision regarding Plaintiff's RFC.

***Additional Evidence Presented to the Appeals Council***

After the ALJ's decision, Dr. Ross conducted neurodiagnostic testing, which included nerve conduction velocity testing. *Id*. at 373-79. The testing showed normal distal onset latency in all nerves. *Id*. at 374. In Dr. Ross's impression report, however, she stated that Plaintiff had delay in the right median nerve consistent with carpal tunnel. *Id*. She also stated findings of neuropathy and radiculopathy. *Id*. Dr. Ross additionally interpreted the results of an MRI as showing mild spinal stenosis at C3-C6, moderate bony foraminal stenosis at C3-C6, no focal disc protrusion or herniation, and an unremarkable cervical spinal cord. *Id*. at 379. Plaintiff subsequently submitted this evidence to the Appeals Council. *Id*. at 373-79. On April 15, 2016, the Appeals Council denied review, rendering the ALJ's decision the final Agency decision. *See* [21] at 2.

The Appeals Council did not discuss the new evidence that was submitted. *See* [15] at 6.[10] However, the regulations 'do not require the [Appeals Council] to provide a discussion of the newly submitted evidence or give reasons for denying review.'" *Hardman v. Colvin*, 820 F.3d 142, 150 (5th Cir. 2016) (internal citations omitted). Thus, "it was not error for the Appeals Council to omit a discussion of the additional treatment records" that were submitted by Plaintiff. *Whitehead v. Colvin,* 820 F.3d 776, 780 (5th Cir. 2016).

When the Appeals Council receives a request for review, it "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to

[10] The appeals counsel exhibit list included Exhibit 17F. Which are the treatment records from Diane E. Ross, M.D. dated March 11, 2015 through March 31, 2015. *See* [15] at 9.

an administrative law judge." 20 C.F.R. § 404.967. "The Appeals Council will review a case if—(1) [t]here appears to be an abuse of discretion by the [ALJ]; (2) [t]here is an error of law; (3) [t]he action, findings or conclusion of the [ALJ] are not supported by substantial evidence; or (4) [t]here is a broad policy or procedure issue that may affect the general public interest." 20 C.F.R. §404.970(a).

Claimants are permitted to submit new evidence to the Appeals Council, and such evidence may justify remand if it is material. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003). Evidence is material if it relates to the time period for which the disability benefits were denied and there is a reasonable probability that it would have changed the outcome of the disability determination. *Id*. Additionally, "the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner]'s decision, but only if the claimant shows good cause for failing to present the evidence earlier." *Clark v. Astrue*, No. 2:09CV252-KS-MTP, 2010 WL 5107066, at *3 (S.D. Miss. Oct. 28, 2010), report and recommendation adopted, No. 2:09CV252-KS-MTP, 2010 WL 5101391 (S.D. Miss. Dec. 9, 2010) (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991)).

If new evidence is presented to the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are supported by substantial evidence. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005); *see also Jones v. Astrue*, 228 Fed. App'x 403, 406-407 (5th Cir. 2007) (cautioning against remanding cases based on new evidence presented to the Appeals Council without meaningful regard for the substantial evidence standard). "When a claimant submits new evidence to the Appeals Council, the Council must consider the evidence if it is 'new and material' and if it

'relates to the period on or before the ALJ's decision.'" *Hardman v. Colvin*, 820 F.3d at 150; (quoting *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015)). If the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence" in the record as a whole, the Appeals Council will review the ALJ's decision. *Id*.

When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995). However, a remand is justified only if the claimant makes "a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Id.* Evidence is not material for purposes of a remand unless it "relates to the time period for which disability benefits were denied." *Id.* Furthermore, evidence is not material if it relates "to the deterioration of a previously non-disabling condition resulting after the period for which benefits are sought." *Id.* at 555 n. 14.

There is not a reasonable probability that Plaintiff's new evidence would have changed the outcome of his disability determination.[11] The additional evidence merely supported the already established determinations. *See* [15] at 374, 379. The ALJ had already found that Plaintiff had severe lumbar disc displacement, lumbago, polyneuropathy, cervicalgia, and

[11] The relevant time period to establish disability in this case was from the claimant's alleged disability onset date of April 15, 2012, through the date of the ALJ's decision, February 19, 2015. Plaintiff has not shown, nor is it evident from the record that this new evidence of doctor records dated March 11, 2015 to March 31, 2015, relates to the time period for which disability benefits were denied. It may provide a basis for a new application for disability benefits, but not is justification for remand. *See, e.g.*, *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995); *Wilson v. Astrue*, No. 3:10CV221 CWR-LRA, 2011 WL 3924862, at *5 (S.D. Miss. Aug. 15, 2011), *report and recommendation adopted*, No. 3:10CV221-CWR-LRA, 2011 WL 3924868 (S.D. Miss. Sept. 6, 2011).

restless leg syndrome. *Id*. at 18. Moreover, the additional evidence does not outweigh the substantial evidence in the record that was already considered by the ALJ in support of her assessment that Plaintiff could perform a restricted range of light work. *Id*. at 322-23, 352-54. For these reasons, the Appeals Council did not err in denying Plaintiff's request for review.

**CONCLUSION**

Based on the foregoing, the Court finds that the Commissioner's decision is supported by substantial evidence and that no reversible errors of law were committed by the ALJ.

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion for Summary Judgment [20] is DENIED,
2. The Commissioner's final decision is AFFIRMED,
3. This action is DISMISSED with prejudice, and
4. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 18th day of July, 2017.

s/ Michael T. Parker
United States Magistrate Judge